RENDERED: NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2019-CA-1117-ME

JONATHAN M. WARAWA                                                      APPELLANT


                        APPEAL FROM SHELBY CIRCUIT COURT
v.                      HONORABLE S. MARIE HELLARD, JUDGE
                        ACTION NO. 12-CI-00658


MICHELYNN D. WARAWA                                                      APPELLEE

                                        AND


NO. 2019-CA-1642-MR

JONATHAN M. WARAWA                                                      APPELLANT


                        APPEAL FROM SHELBY CIRCUIT COURT
v.                      HONORABLE S. MARIE HELLARD, JUDGE
                        ACTION NO. 12-CI-00658


MICHELYNN D. WARAWA                                                      APPELLEE

                                        AND

JONATHAN M. WARAWA                                        APPELLANT


v.                  APPEAL FROM SHELBY CIRCUIT COURT
                    HONORABLE S. MARIE HELLARD, JUDGE
                    ACTION NO. 12-CI-00658


MICHELYNN D. WARAWA                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  Jonathan M. Warawa ("Jonathan") appeals the June 27,

2019, October 3, 2019, March 25, 2020, and June 10, 2020 orders of the Shelby

Circuit Court, Family Division.  After careful review, we affirm.

## BACKGROUND

The marriage of Jonathan and Michelynn D. Warawa ("Michelynn")

was dissolved by decree on October 17, 2013.  Two minor children, a son and a

daughter, were born of the marriage.  This action has a lengthy and complicated

history, including a prior appeal.

> Following the entry of the decree of dissolution . . . , the
> issue of child custody remained unresolved for almost

four years. During that time, the parties were enmeshed in litigation regarding the care, custody and control of their children. Emergency protective orders were entered; dependency, neglect and abuse actions were filed; parenting schedules and plans were set forth; depositions were taken; psychological evaluations were performed; multiple custodial evaluations and updates were made; and there were multiple therapists and parenting coordinators involved. During that same time, Jonathan filed bar complaints against counsel and complaints against other professionals with their respective boards. In all, more than 200 pleadings and orders have been filed or entered.

*Warawa v. Warawa*, 587 S.W.3d 631, 632-33 (Ky. App. 2019).

In 2013, by agreed order, the parties decided Jonathan would claim the children as dependents for tax purposes in even years and Michelynn would claim them in odd years. On October 9, 2017, the family court entered an order reciting an agreement reached by the parties regarding their children. The parties agreed to joint custody of the minor children. They also agreed each parent would be consulted prior to any appointment with the children's pediatrician. The parties further agreed, during a child's medical appointment, "[o]ne parent may be in person and the other, at minimum shall be present via telephone." Record ("R.") at 650. The parties agreed to appointment of a parenting coordinator to assist them with issues regarding custody and parenting.

After additional litigation relating to the parties' inability to agree on issues relating to the children's medical treatment, the court entered an order

stating "[with] regard to medical treatment, if [a doctor] says a procedure is necessary, then it shall be performed; if the [treatment] is optional, absent the parents' joint consent and agreement, the [treatment] shall not be performed." R. at 1291. Litigation relating to the parties' inability to agree about the children's medical appointments and treatments continued thereafter.

On September 11, 2019, Jonathan filed a motion to show cause alleging Michelynn violated the October 9, 2017 order by failing to call him while at the parties' daughter's appointment with Dr. Howell, an optometrist. On October 3, 2019, the family court denied Jonathan's motion. The court found the parties agreed to schedule an appointment for the child with Dr. Howell. Based on this agreement, the family court found no violation of the October 9, 2017 order. The court subsequently denied Jonathan's motion to reconsider the order.

With regard to child support, in the October 9, 2017 order, the parties agreed to use the "Colorado formula" for calculating child support and temporary child support would be retroactive to August 3, 2017. A temporary agreed order for Jonathan to pay $659.00 was entered on December 5, 2017 and was made retroactive to the agreed upon date. After engaging in discovery relating primarily to Michelynn's income, Jonathan filed a verified motion to modify child support on May 11, 2018, requesting gifts from Michelynn's parents be included as her income for calculation of child support.

After Jonathan filed his motion, the parties filed joint stipulations relating to child support.  R. at 1102-07.  They agreed Jonathan earns an annual salary of $115,607.78 as an employee of the University of Louisville.  *Id.* at 1102.  He also pays health, dental, and vision insurance for the children in the amount of $144.00.  *Id.*  Michelynn earns $1,877.20 per month as an employee of the Council of Co-Owners of Glenview.  *Id.*  At some point in the last two years, Michelynn earned $17.00 per hour as an employee of Nabisco.  *Id.*

The stipulations also include several statements regarding payments Michelynn's parents make on her behalf including paying her mortgage, taxes, interest, and home insurance in the amount of $12,878.72 per year.  *Id.*  Michelynn's parents also gave her $40,000.00 for the down payment on her home.  *Id.* at 1105.  Her parents pay her portion of the children's private school tuition which amounted to $7,148.25 for the 2017-2018 school year and $7,200.00 for the 2018-2019 school year.  *Id.*  They also pay the following monthly expenses for Michelynn:  (a) internet and cable for $225.31; (b) yard maintenance for $79.50; (c) pest control for $30.00; (d) security system service for $18.00; (e) homeowners association ("HOA") fees for $12.50; (f) HVAC maintenance for $11.72; and (g) cellphone service for $35.40.  *Id.*

The parties also stipulated to fees related to the divorce paid by Michelynn's parents.  They paid her legal fees in the amount of $73,600.63 in

2016; $93,728.03 in 2017; and $26,950.10 in 2018. *Id.* at 1106. They also paid her portion of the parenting coordinator fees in the amounts of $7,481.25 in 2017 and $3,663.50 in 2018. *Id.* Michelynn's parents paid her portion of friend of the court fees in the amounts of $1,056.25 in 2016 and $1,876.25 in 2017. *Id.* They also paid fees for experts in the divorce action including: $350.00 to Dr. Cebe and $1,140.00 to Dr. Ebben in 2016; and $13,560.00 to Dr. Jenuwine and $300.00 to Dr. Ebben in 2017. *Id.* Michelynn's parents also paid her therapy bills totaling $1,400.00 in 2017 and $1,355.00 in 2018. *Id.* Finally, they paid $902.00 in fees to the children's therapist. *Id.*

After filing the stipulations, the parties briefed the issue of child support modification. On June 27, 2019, the family court entered an order modifying Jonathan's child support obligation to $510.00 per month.[1] The court found Jonathan's gross monthly income to be $9,634.00 and Michelynn's gross monthly income to be $3,963.00 based on her wages of $1,877.20 and expenses paid by her parents on her behalf.

Specifically, the court found Michelynn's parents' payment of her mortgage, interest, taxes, and insurance; as well as the children's tuition, internet and cable service, security system service, pest control, yard maintenance, HOA

---

[1] The June 27, 2019 order grants Michelynn's motion to amend a May 30, 2019 order because the family court misstated the amount Michelynn's parents pay for the children's private school tuition in the first order.

fees, HVAC maintenance, and cell phone service qualified as income for calculation of child support. The court found these to be income to Michelynn because they were "reoccurring and regularly paid by her parents." R. at 1217. The family court declined to include Michelynn's parents' payment of her legal fees, parenting coordinator fees, friend of the court fees, expert fees, and therapy bills as income to Michelynn. The court found "none of these expenses are routine or regular." The court found the expenses varied from year to year and there was "no way to predict whether any of those expenses [would] reoccur." *Id.*

The parties' parenting coordinator, Louis P. Winner, made three sets of recommendations on February 27, 2018; May 11, 2018; and February 8, 2019, which informed the family court's decision which is at issue in appeal number 2020-CA-0796-MR.[2] Jonathan filed objections to each set of recommendations.[3] The family court held a hearing on Jonathan's objections to the recommendations.

In the resulting order, the family court, in relevant part, (1) declined to hold Michelynn in contempt for two instances in which Jonathan did not receive notice of the children's medical appointments; (2) found Jonathan in contempt and

---

[2] Mr. Winner is the third parenting coordinator to be appointed in this case.

[3] The family court adopted the parenting coordinator's first set of recommendations without a hearing on Jonathan's objections. Jonathan appealed, and this Court reversed and remanded the matter to the family court, holding the court's adoption of the parenting coordinator's recommendations without a hearing was an improper delegation of the court's final decision-making authority. *Warawa*, 587 S.W.3d at 636-37.

ordered him to reimburse Michelynn $9,064.00 because he claimed the children as dependents for tax purposes in 2017 in violation of the 2013 agreed order; (3) awarded Michelynn $1,760.00 in attorney fees due to Jonathan's obstruction and unwillingness to follow the court's order relating to taxes; (4) declined to hold Jonathan in contempt for failing to give Michelynn sixty days' notice of a trip he took with the children outside the United States; (5) ordered Michelynn to hold the children's passports; and (6) awarded Michelynn an additional $2,500.00 in attorney fees for Jonathan's obstructive actions, filing of excessive *pro se* motions, and refusal to cooperate with the parenting coordinator.

Both parties filed motions to alter, amend, or vacate the family court's March 25, 2020 order. Jonathan's motion was filed on April 24, 2020. Upon a motion by Michelynn, the family court struck Jonathan's motion as untimely on June 10, 2020. The court also ruled on Michelynn's motion on the same day. These appeals followed.

## STANDARD OF REVIEW

"Our review of child support awards is governed by the abuse of discretion standard." *Holland v. Holland*, 290 S.W.3d 671, 674 (Ky. App. 2009) (citation omitted). A family court abuses its discretion only where its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted).

Furthermore, "[w]hen a court exercises its contempt powers, it has nearly unlimited discretion." *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007) (citation omitted). We will disturb a family court's determination regarding contempt only where it has abused its discretion. *Id*. Similarly, a family court's award of attorney fees is reviewed for abuse of discretion. *Allison v. Allison*, 246 S.W.3d 898, 909 (Ky. App. 2008) (citation omitted).

## ANALYSIS

We will address each of Jonathan's three appeals separately. However, before reaching the merits of Jonathan's appeals, we must address serious deficiencies in his briefs under CR[4] 76.12. An appellant's argument must include "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). Preservation statements ensure the reviewing Court "can be confident the issue was properly presented to the [family] court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). Jonathan's briefs are almost entirely devoid of preservation statements.[5]

---

[4] Kentucky Rules of Civil Procedure.

[5] Jonathan's brief in 2019-CA-1117-ME contains preservation statements for his arguments.

Furthermore, the civil rules mandate the appellant's argument contain "ample . . . citations of authority pertinent to each issue of law[.]" CR 76.12(4)(c)(v). "It is not our function as an appellate court to research and construct a party's legal arguments. . . . We will not search the record to construct [Jonathan's] argument for him, nor will we go on a fishing expedition to find support for his underdeveloped arguments." *Prescott v. Commonwealth*, 572 S.W.3d 913, 923 (Ky. App. 2019) (citation omitted). In all three appeals, Jonathan's arguments are largely without citation to relevant authority and are, instead, a series of conclusory statements.

Although Jonathan is proceeding *pro se*, he is not exempt from the rules for appellate practice. "Because [Jonathan] is not an attorney, we cannot expect the elegance or sophistication of legal thought we should expect from members of our learned profession. . . . However, we have every reason to expect the briefs filed by *pro se* appellate advocates to demonstrate a good faith attempt to comport with CR 76.12[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 697-98 (Ky. App. 2010) (internal quotation marks and citations omitted). Where an appellant's brief does not include preservation statements, we may (1) ignore the deficiency and proceed with our review on the merits; (2) strike the brief or the offending portions under CR 76.12(8)(a); or (3) review for manifest injustice. *Ford v. Commonwealth*, 628 S.W.3d 147, 154 (Ky. 2021). Because Jonathan's arguments

fail on their merits, we ignore the deficiencies and proceed with review of his claims.

## 2019-CA-1117-ME

In 2019-CA-1117-ME, Jonathan raises the following arguments: (1) the family court erred by declining to include certain monetary gifts from Michelynn's parents as income for purposes of child support calculation; (2) the court failed to impute Michelynn income previously agreed upon by the parties; and (3) the family court made the modification of child support retroactive to the incorrect date.

First, the family court did not abuse its discretion by declining to include some monetary gifts from her parents as Michelynn's gross income for purposes of calculating child support. Jonathan asserts the family court should have included all gifts from Michelynn's parents, including legal fees and other costs associated with this action, as gross income. The family court included sums which Michelynn's parents gifted her monthly as income because they are regularly paid and reoccurring. These gifts include payment of Michelynn's mortgage, taxes, interest, insurance, internet and cable service, lawncare service, pest control, security system service, HOA dues, cell phone service, and the children's tuition. However, the family court declined to include payments of

Michelynn's legal fees and other costs associated with this action because they are not routine, regular, or reoccurring.

"Gross income" is defined for the purpose of child support calculation to include "income from any source," including gifts. KRS[6] 403.212(2)(b). A family court may find a gift should not be included as income where it is nonrecurring. *Layman v. Bohanon*, 599 S.W.3d 423, 433 (Ky. 2020) (citing *Stewart v. Burton*, 108 S.W.3d 647, 648-49 (Ky. App. 2003)). Herein, the court did not abuse its discretion in finding only those gifts which are routine and reoccurring qualify as income for calculation of child support.

Next, the family court did not err in declining to impute Michelynn wages at $17.00 per hour. Based on the stipulations of the parties, the court found, in addition to the gifts from her parents which qualified as income, Michelynn earns $1,877.20 per month as an employee of the Council of Co-Owners of Glenview. The parties also stipulated that, at some point during the prior two years, Michelynn was employed by Nabisco earning $17.00 per hour.

For purposes of child support calculation, income "must be read as creating a presumption that future income will be on a par with the worker's most recent experience." *Keplinger v. Keplinger*, 839 S.W.2d 566, 569 (Ky. App. 1992) (citing KRS 403.212(2)(a)). The party who wishes the family court to use a

---

[6] Kentucky Revised Statutes.

different income level bears the burden of presenting sufficient evidence to support the request. *Layman*, 599 S.W.3d at 434 (citation omitted). Herein, Jonathan did not provide sufficient evidence proving Michelynn should have been imputed wages at $17.00 per hour rather than her most recent earnings of $1,877.20 per month. Therefore, we find no abuse of discretion.

Finally, the family court did not make the child support order retroactive to the incorrect date. Jonathan argues the modification to his child support obligation should have been made retroactive to August 3, 2017 based on a prior agreement by the parties. However, the parties agreed only that temporary child support would be retroactive to that date. On this basis, the family court made its December 5, 2017 temporary child support order retroactive to August 3, 2017. Jonathan filed a subsequent motion to modify child support on May 11, 2018. The order modifying Jonathan's obligation which is the subject of this appeal was entered on June 27, 2019, and made retroactive to May 11, 2018.

A child support order "may be modified only as to installments accruing subsequent to the filing of the motion for modification[.]" KRS 403.213(1); *see also Giacalone v. Giacalone*, 876 S.W.2d 616, 620 (Ky. App. 1994). Therefore, the family court properly applied the statute when it made the modification to Jonathan's child support obligation retroactive to May 11, 2018, the date on which he filed his motion.

## 2019-CA-1642-MR

In 2019-CA-1642-MR, Jonathan argues the court erred in denying his motion to show cause related to Michelynn's failure to call him while at their daughter's appointment with Dr. Howell without an evidentiary hearing. Jonathan asserts this was a matter of medical care, making it an issue of custody necessitating a hearing. Jonathan relies on the prior appeal in this action wherein this Court held issues of medical care are matters of custody. *Warawa*, 587 S.W.3d at 636 (citing *Keeton v. Keith*, 511 S.W.3d 918, 921 (Ky. App. 2017)).

Although issues relating to children's medical care are matters of custody, the circumstances herein are easily distinguishable from those in the prior appeal. Therein, this Court reversed and remanded the family court's decision because it delegated its decision-making authority to a parenting coordinator and adopted the recommendations of the coordinator without a hearing on Jonathan's objections. *Id.* at 636-37. Here, the family court did not rely on the recommendation of the parenting coordinator but rather independently considered the evidence and ruled on Jonathan's motion.[7]

---

[7] Although Jonathan insists he is entitled to an evidentiary hearing on his motion, the facts are undisputed. The parties agreed their daughter should see Dr. Howell. Jonathan had knowledge of the appointment but was unable to attend in person. Neither party called the other during the appointment.

-14-

In 2020-CA-0796-MR, Jonathan makes the following arguments: (1) the family court erred in striking his April 24, 2020 motion as untimely; (2) the family court erred in holding him in contempt for his violation of the parties' 2013 agreed order regarding taxes; (3) the family court violated federal tax law in ordering him to reimburse Michelynn for the refund she would have received had she claimed the children as dependents for tax purposes in 2017; (4) the family court should have held Michelynn in contempt for failing to provide Jonathan adequate notice of two of the children's medical appointments; (5) the family court abused its discretion in awarding Michelynn attorney fees; and (6) the family court erred in ordering the children's passports remain in Michelynn's possession.

First, the family court acted appropriately by striking Jonathan's motion to alter, amend, or vacate the March 25, 2020 order as untimely. Jonathan admits he was mistaken in believing he had thirty days to file his motion. "A motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." CR 59.05. Jonathan served his motion on April 23, 2020. As Jonathan's motion was clearly untimely under CR 59.05, we find no error.

Next, the family court did not err in finding Jonathan in contempt for violating the 2013 agreed order. "Any court or judge may punish any person guilty

-15-

of contempt for disobeying a judicial order entered under the authority of the Court." *Newsome v. Commonwealth*, 35 S.W.3d 836, 839 (Ky. App. 2001) (footnote omitted). Furthermore, "a court not only has the right but also the duty to protect its authority and dignity against contemptuous conduct." *Meyers*, 233 S.W.3d at 216 (citation omitted). Jonathan admits to claiming the children on his 2017 taxes thereby violating the 2013 agreed order. In light of Jonathan's obstructiveness and unwillingness to follow court orders, the family court acted well within its discretion by ordering him to pay $1,760.00 in attorney fees.

Relatedly, the family court did not violate federal tax law in ordering Jonathan to reimburse Michelynn for the amount she would have received as a refund had she been able to claim the children as dependents on her 2017 taxes. Jonathan primarily argues Michelynn should have completed Internal Revenue Service ("IRS") Form 8332 to claim the children as dependents in 2017.[8] However, it is undisputed Jonathan claimed the children as dependents for tax purposes in 2017 in violation of the 2013 agreed order. Regardless of what documentation may have been required by the IRS to effectuate Michelynn's claim of the children as dependents on her 2017 tax return, Jonathan violated the court's

---

[8] Jonathan alleges Form 8332 was required because Michelynn did not have the children for at least fifty percent of their overnight care during 2017.

order.  In ordering Jonathan to reimburse Michelynn, the family court did not violate or in any way adjudicate federal tax law.

Fourth, the family court did not abuse its discretion in declining to hold Michelynn in contempt for failing to ensure Jonathan had notice of two instances in which the children received medical treatment.  The October 9, 2017 order requires each party to consult with the other when he or she seeks medical treatment for the children.  A court's discretion over the issue of contempt is nearly unlimited.  *Meyers*, 233 S.W.3d at 215 (citation omitted).  The family court declined to find contempt but warned "should Michelynn continue to schedule medical appointments for the children with no notice to [Jonathan] that such behavior would rise to the level of contempt."  R. at 16.  This is not an abuse of the court's broad discretion.

Fifth, the family court did not abuse its discretion in awarding Michelynn additional attorney fees in the amount if $2,500 because Jonathan's "conduct in obstructing court orders, refusing to participate in good faith in the parent[ing] coordinator process (with 3 different PCs), his intimidation of the children's therapist, and his incessant *pro se* motions are actions that caused [Michelynn] to incur additional cost."  R. at 1796.

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this

> chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

KRS 403.220. Herein, the family court considered the financial resources of the parties and, considering Jonathan's conduct, awarded Michelynn attorney fees. We find no abuse of discretion.

Finally, the family court did not err in ordering the children's passports remain in Michelynn's possession. The family court "may make such other orders as are necessary to properly effectuate joint custody." *Squires v. Squires*, 854 S.W.2d 765, 769 (Ky. 1993) (citation omitted). In addition to ordering Michelynn keep the children's passports when not in use, the family court set out a number of other requirements to facilitate either party's international travel with the children including requiring sixty days' notice and provision of an itinerary to the other party, requiring Michelynn to provide the children's passports within four days of receiving the itinerary, and mandating their return by Jonathan within four days of returning from a trip. R. at 2145. These orders are appropriate to effectuate the parties' joint custody of the children.

## CONCLUSION

Based on the foregoing, the orders of the Shelby Circuit Court, Family Division are affirmed.

-18-

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jonathan M. Warawa, *pro se*
Shelbyville, Kentucky

BRIEFS FOR APPELLEE:

Louis I. Waterman
Spencer J. Brooks
Lindsay I. Hardin
Prospect, Kentucky